*Not for Publication                                          [REDACTED]

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| HALL WHITE, | Civil Action No. 06-05177 (FLW) |
| Plaintiff, | |
| v. | |
| | OPINION |
| CITY OF TRENTON, TRENTON POLICE DEPARTMENT, CHIEF OF POLICE, et al., | |
| Defendants. | |

RECEIVED
MAY 20 2009
AT 8:30_____M
WILLIAM T. WALSH
CLERK

WOLFSON, United States District Judge:

Presently before the Court is a Motion for Partial Summary Judgment brought by Defendants City of Trenton ("the City"), Trenton Police Department ("TPD") and former Director of Police J. Santiago ("Director Santiago")(collectively, the "City Defendants") pursuant to Fed.R.Civ.P. 56 in connection with Plaintiff Hall White's ("Plaintiff") § 1983 claims that the City Defendants violated his constitutional rights by failing to adequately train, supervise and discipline defendant TPD officers Rossetti, Fennimore, Kmiec, Kurfuss and Gonzales (collectively, "Defendant Officers"), proximately causing the Defendant Officers to falsely arrest Plaintiff on two separate occasions and to use excessive force that resulted in his injuries. The City Defendants also seek sanctions pursuant to Fed.R.Civ.P. 11

1

based upon Plaintiff's refusal to voluntarily dismiss the charges against them once discovery had concluded, alleging it was clear at that point that there was no legal or evidentiary support for these claims. In response, Plaintiff cross-moves for attorney's fees pursuant to Fed. R. Civ P. 11 (c)(2).

For the reasons more fully set forth below, the City Defendants' motion for partial summary judgment is granted in part, denied in part. Plaintiff's claims are limited to claims of failure to supervise and discipline. The TPD is dismissed from this action as it is not a proper party.

## I. STATEMENT OF FACTS AND PROCEDURAL HISTORY[1]

This civil rights action arose out of two separate arrests during which Plaintiff alleges Defendant Officers used excessive force and arrested him without probable cause, in one case filing false aggravated assault charges against him. On November 8, 2004, defendants Kmiec and Kurfuss were detailed to a Trenton residence based on a report that an intoxicated individual, later identified as Plaintiff, was trying to kick in the front door. (Certification of Kimberley M. Wilson ("Wilson Cert."), ¶ 9, Exh. G at COT 081.) Kmiec and Kurfuss physically restrained Plaintiff[2] and arrested him for obstructing the administration of law. While effectuating the arrest, Plaintiff alleges Kmiec and/or Kurfuss both physically and

---

[1] Defendants admit these facts for the purposes of this motion for partial summary judgment only.

[2] In deciding the present motions, this Court makes no findings as to Plaintiff's claims against the Defendant Officers.

verbally abused him, at one point telling him to "shut the fuck up." (White Dep., T215:12-13.) No other TPD officers, including Director Santiago, were present at the scene.

Plaintiff was transported to TPD Headquarters and placed in lock-up. Ultimately, all charges against Plaintiff were dismissed. Plaintiff filed a Notice of Tort Claim against the City on February 4, 2005. Plaintiff testified he did not file a complaint with TPD's Internal Affairs regarding the November 2004 arrest because he had already filed a Notice of Tort Claim. (White Dep., T225:23-226:2.)

On February 7, 2005, Plaintiff was again arrested, this time for improper behavior, and transported to TPD Headquarters. Plaintiff alleges that during his arrest and subsequent 24-day detention, certain Defendant Officers illegally assaulted him, while others failed to intervene on his behalf. (Complaint ("Compl."), ¶¶ 34, 35, 36 37.) Plaintiff maintains that the Defendant Officers then conspired to cover up their wrongdoing by filing false aggravated assault charges against him that alleged he attacked the officers while he was in the detention area. (Compl., ¶ 46.) Rossetti testified he discharged pepper spray onto Plaintiff's face while Plaintiff was in his cell and then did not subsequently wash it off Plaintiff's face. (Rossetti Dep., T91:15-17; 105:17-20.) Miller was also present in Plaintiff's cell and did not attempt to wash the spray off Plaintiff's face. Videotapes were made of the detention area where Plaintiff was held, but were not preserved. The charges against Plaintiff which alleged an assault on the Defendant Officers were later dismissed. No investigation into the Defendant Officers' use of force was conducted as a result of the charges being dismissed. Again, Plaintiff

testified that he did not file a complaint with Internal Affairs regarding this arrest.

TPD Internal Affairs is responsible for overseeing and investigating excessive force complaints. (Santiago Dep., T12:17-23.) At the time of the alleged incidents, TPD Internal Affairs reported directly to Director Santiago. (T12:16-23.) Internal Affairs complaints were generated from several sources, including letters to Director Santiago, walk-ins, and referrals from other agencies such as the New Jersey Attorney General's Office and the Mercer County Prosecutor's Office. (T12:24 - 13:6.) Notably, the TPD did not have a policy of investigating excessive force allegations made through Notices of Tort Claims.

Director Santiago was the policy-maker for the City regarding police discipline and investigations into misconduct at the time Plaintiff was arrested. (T11:11-18.) He assumed this position in 2003. (T7:2.) Director Santiago testified that he believed the then-current TPD policy gave civilian complainants wide discretion in reporting incidents of police misconduct and that these policies were "more than adequate" to deal with such issues. (T:16:3-8;18:16-21.) For this reason, he did not believe it was necessary to retrieve Notices of Tort Claims that alleged excessive use of force. (T15:7 to 16:8). He further testified that the TPD policy complied with the Attorney General's guidelines[3] and that it was monitored by the Mercer County prosecutor's office, which received an annual report from TPD Internal Affairs. (T:18:16-21; 19:10-18) According to the annual Internal Affairs Summary Report

---

[3] Since neither party has submitted the Attorney General's guidelines into evidence, the Court takes judicial notice of them.

Form (the "Report"), there were a number of excessive force complaints for which was no resolution.

Plaintiff filed a complaint with this Court on October 27, 2006. On August 14, 2007, Plaintiff filed his First Amended Complaint and Jury Demand (the "Amended Complaint"). Discovery ended on August 29, 2008. Through a joint application to this Court, Counts I and II of the Amended Complaint were dismissed on September 12, 2008. On October 24, 2008, the City Defendants filed this motion for partial summary judgment to dismiss Plaintiff's Counts III, IV, and VII claims against them. Count III alleges a failure to train, supervise, and discipline Defendant Officers with regard to Plaintiff's November 8, 2004 arrest and detention, Count IV alleges same but with regard to Plaintiff's February 7, 2005 arrest, and Count VII alleges a general failure to train, supervise and discipline TPD officers. In essence, Plaintiff states one cause of action against the City Defendants under § 1983.

## II. STANDARD OF REVIEW

Summary judgment is appropriate where the Court has determined that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c); Celotex Corp. v. Catrett, 477 U.S. 317 330 (1986). A "material fact" is one that could affect the outcome of a suit under the applicable rule of law. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986). Disagreements over irrelevant or unnecessary facts will not preclude a grant of summary judgment. Id. "One of the principal purposes of the summary judgment rule is to isolate and dispose of factually unsupportable

claims or defenses, and . . . that [the rule] should be interpreted in a way that allows it to accomplish this purpose." Celotex, 477 U.S. at 323-24. "[W]hen the record is such that it would not support a rational finding that an essential element of the non-moving party's claim or defense exists, summary judgment must be entered for the moving party." Turner v. Schering-Plough Corp., 901 F.2d 335, 341 (3d Cir. 1990).

The party moving for summary judgment has the burden of establishing that no "genuine issue" exists. Celotex, 477 U.S. at 330. Once the moving party satisfies this initial burden, the non-moving party "must set forth specific facts showing that there is a genuine issue for trial." Fed. R. Civ. P. 56(e). To do so, the non-moving party must "go beyond the pleadings and by her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex, 477 U.S. at 324. In other words, the non-moving party must "do more than simply show that there is some metaphysical doubt as to material facts." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986); see also Ridgewood Bd. of Ed. v. Stokley, 172 F.3d 238, 252 (3d Cir. 1999).

At the summary judgment stage the court's function is not to weigh the evidence and determine the truth of the matter, but rather to determine whether there is a genuine issue for trial. Anderson, 477 U.S. at 249. A genuine issue of material fact is one that will permit a reasonable jury to return a verdict for the non-moving party. Id. at 248. In evaluating the evidence, a court must "view the inferences to be drawn from the underlying facts in the light

most favorable to the [non-moving] party." Curley v. Klem, 298 F.3d 271, 276-77 (3d Cir. 2002) (citations omitted).

III. DISCUSSION

A. Municipal Liability

A private cause of action may be brought under 42 U.S.C. § 1983 against any person who, acting under color of state law, deprives another of rights, privileges, or immunities secured by the Constitution or laws of the United States. The statute, in and of itself, is not a source of substantive rights but provides "a method for vindicating federal rights elsewhere conferred."[4] Graham v. Connor, 490 U.S. 386, 393-94 (1989). The two requisite elements for recovery under 42 U.S.C. § 1983 are: "(1) the conduct complained of must have been done by some person acting under color of law; and (2) such conduct must have subjected the complainant to the deprivation of rights, privileges or immunities secured to him by the Constitution and laws of the United States." Basista v. Weir, 340 F.2d 74, 79 (3d Cir. 1965); Groman v. Township of Manalapan, 47 F.3d 628, 633 (3d Cir. 1995). Thus, in order for a §

---

[4] 42 U.S.C. § 1983 provides, in pertinent part:

> Every person who, under color of any statute, ordinance, regulation, custom, or usage, or any State or Territory, . . . subjects, or causes to be subjected, any citizen of the United States or other person within the jurisdiction thereof to the deprivation of any rights, privileges, or immunities secured by the Constitution and laws, shall be liable to the party injured in an action at law, suit in equity, or other proper proceeding for redress.

1983 claim to survive a motion for summary judgment, the Court must find a genuine issue of material fact as to one of the requisite elements. Coletta v. Board of Freeholders, No. 06-585, 2007 WL 128893, at *3 (D.N.J. Jan. 12, 2007); Grant v. Cathel, No. 05-3956, 2006 WL 3327886, at *3 (D.N.J. Nov. 15, 2006).

When a suit against a municipality is based on § 1983, the municipality can only be liable when the alleged constitutional transgression implements or executes a policy, regulation or decision officially adopted by the governing body or informally adopted by custom. Monell v. Department of Social Services, 436 U.S. 658, 694 (1978); Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d Cir. 1996). A municipality cannot be held liable under 42 U.S.C. § 1983 on a respondeat superior theory of liability. Monell, 436 U.S. at 694. Thus, although the municipality may not be held liable for a constitutional tort under § 1983 on the theory of vicarious liability, it can be held responsible as an entity when the injury inflicted is permitted under its adopted policy or custom. Id.

The Third Circuit has articulated the distinctions between policies and customs:

> A government policy or custom can be established in two ways. Policy is made when a "decisionmaker possessing final authority to establish municipal policy with respect to the action" issues an official proclamation, policy, or edict. A course of conduct is considered to be a "custom" when, though not authorized by law, "such practices of state officials [are] so permanent and well-settled" as to virtually constitute law.

Andrews v. City of Philadelphia, 895 F.2d 1469, 1480 (3d Cir. 1990) (citations omitted); see also Bielevicz v. Dubinon, 915 F.2d 845, 850 (3d Cir. 1990) (same). More specifically, liability

may exist if a municipality acted in one of three ways: "(1) it adopted an official policy that deprives citizens of their constitutional rights; (2) it tolerated or adopted an unofficial custom that results in the unlawful stripping of constitutional rights; or (3) it failed to 'train, supervise, or discipline' its employees so as to prevent them from unlawfully depriving citizen of their constitutional rights." Grendysa v. Evesham Twp. Bd. of Educ., No. 02-1493, 2005 U.S. Dist. LEXIS 22748, at * 42 (D.N.J. Sept. 27, 2005); Labo v. Borger, No. 02-3975, 2005 U.S. Dist. LEXIS 17176, at *9 (D.N.J., August 15, 2005) (citations omitted).

Here, Plaintiff avers the City Defendants are liable for the excessive force allegedly used on him based on a failure to train, supervise or discipline theory. "Municipal liability for failure to train may be proper where it can be shown that policymakers were aware of, and acquiesced in, a pattern of constitutional violations involving the exercise of police discretion." City of Canton, Ohio v. Harris, 489 U.S. 378, 397 (1989) (O'CONNOR, J., concurring in part, dissenting in part.). In City of Canton, the Supreme Court held that "the inadequacy of police training may serve as the basis for § 1983 liability only where the failure to train amounts to deliberate indifference to the rights of persons with whom the police come into contact." Id. at 388. The Court hypothesized that if a training program is unsuccessful in preventing constitutional violations, a decision-maker may, over time, be put on notice that a new program is needed; stated another way, deliberate indifference to the consequences of the training could be established if the decision-maker continues to adhere to a method that is known, or should be known, to fail to prevent constitutional violations by

employees. Id. at 390, n. 10. The burden is high for establishing deliberate indifference on the part of a municipality. "Where a plaintiff claims that the municipality has not directly inflicted an injury, but nonetheless has caused an employee to do so, rigorous standards of culpability and causation must be applied to ensure that the municipality is not held liable solely for the actions of its employee." Bd. of the County Comm'Rs v. Brown, 520 U.S. 397, 405 (1997).

The Third Circuit has held that in order to prevail on a failure to train, discipline or control claim, a plaintiff must "show both contemporaneous knowledge of the offending incident or knowledge of a prior pattern of similar incidents and circumstances under which the supervisor's actions or inaction could be found to have communicated a message of approval to the offending subordinate." Montgomery v. De Simone, 159 F.3d 120, 127 (3d Cir. 1998)(citations omitted). Thus, the City Defendants may be liable for the constitutional violations of their police officers only to the extent that the injuries arose from their policies or customs. See, e.g., Monell, 436 U.S. at 694-95; Beck v. City of Pittsburgh, 89 F.3d 966, 971 (3d. Cir. 1996). In order for Plaintiff to defeat the City Defendants' motion, he must point to evidence in the record from which a reasonable jury could infer (i) that the City Defendants failed to adequately train, supervise or discipline TPD officers in the proper discharge of their duties with respect to making arrests only with probable cause and not using excessive force; (ii) that this failure amounted to an unofficial custom that was conducted with deliberate indifference to citizens' constitutional rights; and (iii) that this deliberate indifference

proximately caused the alleged false arrests and excessive force used on Plaintiff that resulted in his injuries.

Plaintiff complains that at the time his civil rights were allegedly violated there was no TPD policy in place that: 1) effectively tracked individual complaints by civilians, in particular those made through notices of claim; 2) tracked TPD officers who had accumulated excessive force complaints; 3) enforced the TPD's practice of preserving videotape recordings of uses of force or suicide attempts at the jail; and 4) triggered investigations into uses of force when charges against a detainee are dropped. In essence, Plaintiff avers that the City Defendants' deficient policies amounted to unofficial customs. Plaintiff further complains that there is no history of TPD officers being disciplined for using force or for failing to intervene in incidents where excessive force is used by other officers. He avers that any policies or customs regarding excessive force investigations were implemented after his civil rights were violated.

As an initial matter, while it is undisputed that Director Santiago was at the time of the incidents the policymaker for the City regarding police discipline and may be held liable on a failure to train, supervise or discipline theory, the TPD is not a proper party to this action. In a § 1983 lawsuit, "police departments cannot be sued alongside municipalities because a police department is merely an administrative arm of the municipality itself." Hernandez v. Borough of Palisades Park Police Dep't, 58 Fed. Appx. 909, 912 (3d Cir. 2003) (citations omitted); Padilla v. Twp. of Cherry Hill, 110 Fed. Appx 272, 278 (3d Cir. 2004);

11

Retzler v. Bristol Twp., No. 08-3269, 2009 U.S. Dist. LEXIS 18848, at *1 (E.D. Pa. Mar. 11, 2009). Therefore, the TPD's motion for partial summary judgment is granted.

The Court finds, however, that Plaintiff has presented sufficient evidence for a reasonable jury to find that the City Defendants had a custom of failing to effectively track excessive force complaints. Plaintiff's claim that the City Defendants were, as a matter of custom, inattentive to allegations of serious police misconduct is supported by the testimony of Director Santiago and the Report. Significantly, Director Santiago could not explain the Report, which could reasonably be read to indicate that there were a number of excessive force complaints for which there was no resolution: the Report reveals that many cases pending at the end of the year on one report form did not carry over to the following year. While Director Santiago could verify the accuracy of the Report, he was unable to explain how excessive force complaints were internally reviewed after they were dismissed by the Mercer County prosecutor's office as not being criminal in nature. (Santiago Dep., T:65:2-19; 69:13-22.) These cases appear to have fallen off the radar once they were released. Viewed in this context, if the City did not have a policy for effectively tracking complaints, officers in need of more training or discipline may not have received it. A reasonable jury could find the fact that many excessive force complaints appear to "drop off the radar" was "so likely to result in the violation of constitutional rights" as to demonstrate the City's deliberate indifference to its officers' use of force.

In addition, the Court is skeptical of the TPD's custom of not retrieving notices of

excessive force tort claims which are filed pursuant to N.J.S.A. 59:8-8. "The purpose of N.J.S.A. 59:8-8 is to afford the public entity the opportunity to 'prepare a defense' and 'correct the conditions or practices which gave rise to the claim.'" Monaco v. City of Camden, No. 04-2406, 2008 U.S. Dist. LEXIS 10455, at *20 n. 8 (D.N.J. Feb. 13, 2008) (quoting Velez v. City of Jersey City, 180 N.J. 284, 290 (2004) (internal quotations and citations omitted)). Given their purpose, Notices of Tort Claims would at the very least provide TPD Internal Affairs with a proper accounting of all excessive force complaints. Thus, the fact that the TPD did not utilize Notices of Tort Claims, and that Director Santiago testified he thought the then-current procedures were adequate, is relevant to the inquiry into whether the City Defendants adequately responded to excessive force complaints filed. Id. Also, according to the Report, only 1 in 160 complaints resulted in a rule violation. Director Santiago admitted this statistic is cause for concern, but could not adequately explain the reasons why the number is so low. (T:67:14 - 71:1.) These facts, in combination with Director Santiago's inability to explain how excessive force complaints were tracked internally once they were dismissed by the prosecutor's office, are sufficient evidence to raise triable factual questions as to whether the deficiencies in the City's conduct regarding investigations into excessive force complaints against TPD officers demonstrated their deliberate indifference to the risk of unconstitutional conduct by an officer. There is, moreover, a strong "connection between the . . . [allegedly inadequate policy identified] and the specific constitutional violation." See Board of County Com'rs of Bryan County, 520 U.S. at 412. If TPD officers are aware their

13

conduct will most likely not be investigated and they will not be disciplined, it follows that they may run roughshod over the constitutional rights of citizens, as is alleged here.

While a genuine issue of material fact exists as to Plaintiff's failure to supervise and discipline claims, Plaintiff's failure to train claim does not succeed as he has not submitted any evidence as to how TPD officers are instructed with regard to the use of force and effectuating arrests, nor has he explained why such training is inadequate. Plaintiff has not offered any TPD training manuals or expert witnesses on the subject. Although they did not retain the training materials, both defendants Miller and Rossetti testified they had received training on the use of force. During their depositions, Defendant Officers spoke generally about excessive force protocol, but Plaintiff has failed to describe with any specificity the training officers underwent in this area. Director Santiago also did not explain the specifics of the training and, in fact, testified that the Police Training Commission, which is not a party to this action, is responsible for the instruction recruits receive at the academy. Indeed, while indicating that the TPD at times requires officers to undergo re-instruction in particular areas, Director Santiago testified, "the 22 weeks of PTC really [doesn't] come under our purview." (Santiago Dep, T42:22-23.) Plaintiff does not make any reference to that 22 weeks of training nor does he appear to have subpoenaed any records in this that regard. In short, Plaintiff has failed to provide any evidence of deficiencies in the training officers receive and has therefore failed to present evidence from which deliberate indifference could be inferred regarding the training of officers.

Plaintiff alleges that defendant Rossetti had a history of misconduct, but that the TPD allowed him to continue to work without further training, supervision or discipline. Plaintiff has not proffered any evidence that tends to show that the City Defendants were aware of, or should have been aware of, similar unlawful behavior by defendant Rossetti in the past but failed to take precautions against future violations. In <u>Beck v. City of Pittsburgh</u>, 89 F.3d 966, 972 (3d Cir. 1996), the Third Circuit held that five complaints of excessive force in less than five years were sufficient to establish that the defendant officer exhibited a pattern of inappropriate behavior. Important to the court was the fact that the complaints were filed within a short period of time and were similar in nature such that a reasonable jury could have inferred that the chief of police knew, or should have known, of the defendant officer's proclivity to use excessive force.

Here, Plaintiff has proffered evidence of four complaints against Rossetti over a period of seventeen years, only one of which involved the use of force and none of which contained a false arrest allegation. Rossetti was hired in 1987. (Rossetti Dep., T31:1-2.)

These complaints are not sufficiently similar in nature or proximate in time to

constitute a pattern of excessive force and false arrest such that a reasonable jury could find that Director Santiago, who joined the TPD in 2003, six years after the last reported incident against Rossetti, should have known of Rossetti's alleged proclivity. All of these grievances were filed at least seven years before Plaintiff's rights were allegedly violated, and all were filed before Director Santiago assumed his position. Moreover, the one prior excessive force complaint occurred over seventeen years before Plaintiff was arrested. These complaints did not give sufficient notice to the City Defendants that their training was deficient.

Plaintiff also complains that there is no system in place to enforce the TPD's practice of preserving videotape recordings of uses of force or suicide attempts at the jail, yet he fails to put forth any evidence that there is a pattern of videotapes not being preserved in cases involving force against detainees. This Court recognizes that if officers think their acts will not be recorded or preserved, this could reflect a problematic policy because videotaping serves as an important deterrent to police misconduct. However, if Plaintiff had filed an excessive force complaint with the TPD, as others do, the videotape of his detention would have been preserved. Indeed, Director Santiago testified that a videotape is retained and reviewed when a civilian alleges excessive force but not where officers allege a detainee assaulted them. (Santiago Dep., T:77:20 - 78:13.) There is no constitutional requirement to

maintain all videotapes for any defined period of time. Obviously, the TPD cannot divine which detainee will file such a claim without the claim being made. In addition, Plaintiff does not put forth any argument that this lack of enforcement can be causally linked to the alleged constitutional violations of which he complains.[5] His proofs are therefore limited in this regard.

In conclusion, the City Defendants' motion for partial summary judgment is granted in part, denied in part. The TPD is dismissed from this action as it is not a proper party. Plaintiff's counts are limited to claims that the TPD had a custom of failing to effectively track excessive force complaints and discipline the officers involved in them, which amounted to a custom or policy that was conducted with deliberate indifference to citizens' constitutional rights and that this deliberate indifference proximately caused the excessive force allegedly used on Plaintiff that resulted in his injuries.

B. Sanctions

In addition to moving for partial summary judgment, the City Defendants also move for sanctions pursuant to Fed. R. Civ. P. 11. Plaintiff cross-moves. Rule 11 provides:

> By presenting to the court ... a pleading, written motion, or other paper, an attorney or unrepresented party is certifying that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances,
>
> (1) it is not being presented for any improper purpose, such as to harass or to

---

[5] If anything, Plaintiff may have presented evidence of spoliation, rather than a constitutional violation.

cause unnecessary delay or needless increase in the cost of litigation;

(2) the claims, defenses, and other legal contentions therein are warranted [*30] by existing law or by a nonfrivolous argument for the extension, modification, or reversal of existing law or the establishment of new law;

(3) the allegations and other factual contentions have evidentiary support or, if specifically so identified, are likely to have evidentiary support after a reasonable opportunity for further investigation or discovery; and

(4) the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on a lack of information or belief.

Fed.R.Civ.P. 11(b). Although Rule 11 is reserved for only "exceptional circumstances," Gaiardo v. Ethyl Corp., 835 F.2d 479, 483 (3d Cir. 1987), bad faith is not required. In re Prudential Ins. Co. America Sales Practice Litigation Agent Actions, 278 F.3d 175 (3d Cir. 2002). "The Rule seeks to strike a balance between the need to curtail abuse of the legal system and the need to encourage creativity and vitality in the law." Id. at 483-84. When reviewing a party's motion for sanctions, a court must apply "an objective standard of reasonableness under the circumstances." Signorile v. City of Perth Amboy, 523 F. Supp. 2d 428, 435 (D.N.J. 2007) (quoting Martin v. Brown, 63 F.3d 1252, 1264 (3d Cir. 1995)). In addition, Rule 11 contains specific provisions requiring a party seeking sanctions to notify his adversary of the possibility of such sanctions and the reasons for such a motion. Martin, 63 F.3d at 1264 ("The party sought to be sanctioned is entitled to particularized notice including, at a minimum, 1) the fact that Rule 11 sanctions are under consideration, 2) the reasons why sanctions are under consideration, and 3) the form of sanctions under consideration.").

The City Defendants argue that Plaintiff failed to dismiss the charges against them after

the close of discovery when it was obvious the charges could not be sustained on any legal or factual basis. In addition, they allege that Plaintiff failed to reply to their letter notifying him that they would seek sanctions unless he disclosed his theory of liability. They claim they never received a response from Plaintiff. Plaintiff counters by offering evidence that he did respond to the City Defendants' letter and cross-moves for sanctions on the theory that the City Defendants misrepresented to this Court that he filed the Amended Complaint without a legal basis. In his letter, Plaintiff explained his theory of liability.

This Court "must judge the alleged improper conduct by what was reasonable to believe at the time the pleading, motion or other paper was submitted." Signorile, 523 F. Supp. 2d at 435 (denying the defendants' motion for Rule 11 sanctions even though the Court dismissed the case on summary judgment grounds in the defendants' favor). As the City Defendants' motion for partial summary judgment is in part denied, it is apparent this Court does find Plaintiff's Amended Complaint reasonable and that sanctions are therefore improper.

As for Plaintiff's motion for sanctions, the City Defendants have submitted evidence that they did not in fact receive Plaintiff's emailed letter and therefore did not intentionally misrepresent anything to this Court. It appears this was an honest miscommunication between the parties. Thus, the Court concludes that neither the conduct of Plaintiff's counsel nor the City Defendants' was so egregious as to violate Rule 11. Accordingly, both motions for sanctions are denied.

Although summary judgment is denied with respect to the adequacy of the TPD's

excessive force policies and customs, the Court points out that both parties have submitted scant evidence, other than selected excerpts of deposition testimony. The City Defendants may move for summary judgment on this issue if they can present sufficient evidence to show that they indeed take appropriate action to deal with excessive force complaints.

## IV. CONCLUSION

For the reasons more fully set forth above, the City Defendants' motion for partial summary is granted in part, denied in part, and both parties' motions for sanctions are denied. The TPD is dismissed from this action as it is not a proper party.


Dated May 20, 2009

/s/ Freda L. Wolfson
Freda L. Wolfson, U.S.D.J.