**\*\*FOR PUBLICATION\*\***

**UNITED STATES DISTRICT COURT**
**DISTRICT OF NEW JERSEY**

_____
                                              :
HALL WHITE,                                   :        Civil Action No. 06-05177
                                              :
              Plaintiff,                      :
                                              :
       v.                                     :
                                              :               **OPINION**
CITY OF TRENTON, TRENTON POLICE               :
DEPARTMENT, CHIEF OF POLICE, et al.,          :
                                              :
                                              :
              Defendants.                     :
_____      :

**WOLFSON, United States District Judge:**

Presently before the Court is a Motion for Reconsideration brought by Defendants City of Trenton ("the City"), Trenton Police Department ("TPD") and former Director of Police J. Santiago ("Director Santiago")(collectively, the "City Defendants") pursuant to Local Civil Rule 7.1 (i). Through the instant motion, the City Defendants challenge this Court's December 27, 2011 decision in which the Court granted in part and denied in part the City Defendants' motion for summary judgment on Plaintiff Hall White's ("Plaintiff's") § 1983 claims. The City Defendants' motion focuses on the Court's denial of summary judgment to the City and Director Santiago on a Monell municipal liability claim related to a November 8, 2004 excessive force incident ("November 2004 incident") for which no individual officers have been named as defendants. For the following reasons, the motion

1

for reconsideration is granted but the Court affirms its prior denial of summary judgment.

## I.    BACKGROUND

The factual background of this matter is set forth more fully in this Court's prior decision, thus, the Court will only recount the facts necessary for disposition of the instant motion.   Plaintiff's claims arise out of two separate arrests during which Plaintiff alleges that Trenton Police Department ("TPD") Officers used excessive force and arrested him without probable cause.  The first incident took place on November 8, 2004, when Officers Kmiec and Kurfuss were detailed to a Trenton residence based on a report that an intoxicated individual, later identified as Plaintiff, was trying to kick in the front door. Kmiec and Kurfuss physically restrained Plaintiff and arrested him for obstructing the administration of law.   While effectuating the arrest, Plaintiff alleges Kmiec and/or Kurfuss both physically and verbally abused him, at one point telling him to "shut the fuck up."  White Dep. Tr. 215:12-13.  Ultimately, all charges against Plaintiff were dismissed. No other TPD officers, including Director Santiago, participated in the incident.  The second incident took place on February 4, 2005 ("February 2005 incident") and involved a different group of officers.

Importantly, Officers Kmiec and Kurfuss are not named defendants in this action. In his original complaint and his First Amended Complaint, Plaintiff asserted a fourth amendment excessive force claim against the officers involved in the November 2004 incident, referring to them as "P.O. John Doe I" and "P.O. John Doe II."   After his First Amended Complaint was filed, Plaintiff moved to file a Second Amended Complaint

pursuant to Federal Rule of Civil Procedure 15 that would substitute Officers Kmiec and Kurfuss for the John Doe officers.  On December 12, 2007, Magistrate Judge Bongiovanni, the Magistrate Judge assigned to this action, denied Plaintiff's motion for leave to amend because, among other reasons, any claims against Kurfuss and Kmiec would be barred by the applicable statute of limitations.  Order dated December 12, 2007 at 7-8.  Shortly after Plaintiff's motion for leave to amend was denied, the parties jointly moved to dismiss the excessive force claim against "P.O. John Doe I" and "P.O. John Doe II" relating to the November 2004 incident.[1]

Thereafter, the parties engaged in motion practice on the remaining counts of Plaintiff's First Amended Complaint.  The subject of the City Defendants' instant motion for reconsideration is the most recent motion decided by this Court on December 27, 2011.  That summary judgment motion involved the Plaintiff's <u>Monell</u> municipal liability claims against the City Defendants relating to both the November 2004 and February 2005 incidents.  The <u>Monell</u> claim was based on a failure to supervise and discipline ("failure to supervise") theory that the City Defendants failed to adequately track excessive force complaints against TPD officers.

In my ruling, I granted in part and denied in part the City Defendants' motion.  I granted summary judgment on the claim related to the February 2005 incident but denied summary judgment on the claim relating to the November 2004 incident.  The reasoning

---

[1]      At that time, the parties jointly agreed to dismiss a false arrest/malicious prosecution count of the First Amended Complaint also related to the November 2004 incident.

3

underlying my decision was that, by the time of the February 2005 incident, the City Defendants had implemented a system that tracked the number of complaints filed against each police officer, certain details about the incident, and the disposition of the complaint, inter alia. At the time of the November 2004 incident, in contrast, the City Defendants did not have an effective tracking system in place.

## II.    STANDARD OF REVIEW

Local Rule 7.1(i) allows a party to seek reconsideration of a court's decision if there are "matters or controlling decisions which counsel believes the Judge ... has overlooked" within ten business days following the entry of the order or judgment on the original motion. L. Civ. R. 7.1(i); see also Interfaith Cmty. Org. v. Honeywell Int'l, Inc., 215 F.Supp.2d 482, 507 n. 12 (D.N.J. 2002). It is improper on a motion for reconsideration to "ask the Court to rethink what it had already thought through—rightly or wrongly." Oritani Sav. & Loan Ass'n v. Fidelity & Deposit Co., 744 F.Supp. 1311, 1314 (D.N.J. 1990). Rule 7.1(i) does not contemplate a recapitulation of arguments considered by the court before rending its decision. See Bermingham v. Sony Corp. Of Am., Inc., 820 F.Supp. 834, 856 (D.N.J. 1992), aff'd, 37 F.3d 1485 (3d Cir. 1994). Instead, Rule 7.1(i) creates a procedure by which a court may reconsider its decision upon a showing that dispositive factual matters or controlling decisions of law were overlooked by the court in reaching its prior decision. Relief by way of a motion for reconsideration is "an extraordinary remedy" that is to be granted "very sparingly." Interfaith Cmty. Org., 215 F.Supp.2d at 507.

A timely motion for reconsideration may be granted upon a finding of at least one

4

of the following grounds: "(1) an intervening change in the controlling law; (2) the availability of new evidence that was not available when the court granted the motion ...; or (3) the need to correct a clear error of law or fact or to prevent manifest injustice." Max's Seafood Café v. Quinteros, 176 F.3d 669, 677 (3d Cir. 1999); Boswell v. Eoon, No. 10–3493, 2011 WL 5597429, *2 (3d Cir. Nov. 17, 2011).  The Court will grant such a motion only if the matters overlooked might reasonably have resulted in a different conclusion.  Bowers v. Nat'l Collegiate Athletic Assoc., 130 F.Supp.2d 610, 613 (D.N.J. 2001).

## III.  DISCUSSION

The City Defendants base their motion for reconsideration on what they perceive to be an error of law.  As noted, in my December 27, 2011 decision, I granted summary judgment on the City Defendants' motion with respect to the failure to supervise claim related to the February 2005 incident.  Summary judgment was appropriate on the Monell claim against the City Defendants' because, by the February 2005 date, a tracking system that adequately tracked excessive force complaints against TPD officers was in place. Summary judgment was denied, however, with respect to the November 2004 arrest because the testimony of Director Santiago, when read in the light most favorable to Plaintiff, could be read to indicate that no adequate tracking system was in place and functioning by that date.

In the summary judgment briefing for that motion, neither party argued that summary judgment should be granted with respect to one date and denied with respect to the other.  Each party treated the question of Monell liability as relating to both

incidents.  Moreover, the parties did not address that the individual officers who allegedly used force in arresting and jailing Plaintiff are not named as defendants for their role in the November 2004 incident.

On reconsideration, the City Defendants now argue that since Plaintiff did not name as defendants the individual officers who allegedly used excessive force during the November 2004 arrest no determination of their liability may be made.  According to the City Defendants, this means that <u>Monell</u> liability may not attach and summary judgment should be granted in their favor.  The City Defendants rely primarily upon <u>City of Los Angeles v. Heller</u>, 475 U.S. 796 (1986), to support their argument.

At the outset, Plaintiff argues that the City Defendants' motion is an impermissible attempt to argue a point that could have been raised in the underlying motion.  Plaintiff is correct that motions for reconsideration are not the vehicle for a party to "argue what could have been, but was not, argued in the original set of moving and responsive papers." <u>Bowers</u>, 130 F.Supp.2d at 613.  Plaintiff relies on <u>Bowers</u>, <u>supra</u>, in support of this proposition.  The City Defendants respond that they could not have raised this issue in their summary judgment papers because it was only after the Court denied summary judgment on the <u>Monell</u> claim solely with respect to the November 8, 2004 incident that they were faced with the prospect of liability relating to an incident for which there were no officers named as defendants in the suit.

As explained in <u>Bowers</u>, the impetus for the rule that reconsideration may not be used to raise an issue ignored in the underlying motion was that " motions for reargument

ha[d] become quite the matter of course within the District of New Jersey ...."   130 F.Supp.2d at 613.   When <u>Bowers</u> was decided in 2001, parties were filing such motions "even where the Judges of this District ha[d] explicitly considered a party's argument or explicitly considered a certain fact ...."   <u>Id.</u>   Moreover, <u>Bowers</u> notes, the rule against rearguing issues that could have been raised was also created to ensure that parties do not treat reconsideration motions as "a substitute for the appellate process ...."   <u>Id.</u>

In my view, the City Defendants' motion is not an inappropriate use of the reconsideration vehicle.  Even assuming the City Defendants could have anticipated the Court's denial of summary judgment only with respect to the November 8, 2004 incident, this is not a case where the Court has already addressed the defendants' arguments or where the defendants are using the motion as a substitute for an appeal.  Rather, the City Defendants are now raising a legal issue that could have significant implications on the instant suit and, if I were to agree with their interpretation of the law, a reversal of my prior grant of summary judgment would be appropriate.  As such, the motion fits within those category of motions that express a "need to correct a clear error of law or fact or to prevent manifest injustice." <u>Max's Seafood</u>, 176 F.3d at 677.  Therefore, I find that the motion for reconsideration is properly brought and now turn to whether reversal of my prior denial of summary judgment is warranted.

The City Defendants hinge their argument on language in the Supreme Court's decision in <u>Heller</u> that

> neither <u>Monell</u> [ ] nor any other of our cases authorizes the award of damages against a municipal corporation based on

> the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm.  If a person has suffered no constitutional injury at the hands of the individual police officer, the fact that the departmental regulations might have authorized the use of constitutionally excessive force is quite beside the point.

475 U.S. at 799.  The Third Circuit relied upon Heller in Grazier ex rel. White v. City of Philadelphia, when it reasoned in a case in which a jury found no constitutional violation that "[t]here cannot be an award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."  328 F.3d 120, 124 (3d Cir. 2003).  See also Williams v. City of Philadelphia, --- Fed.Appx. ----, 2011 WL 6017967, *3 (3rd Cir.  Dec. 5, 2011).  "This conclusion follows naturally from the principle that municipal liability will only lie where municipal action actually caused an injury."  Grazier, 328 F.3d at 124.

But, contrary to the City Defendants' assertion, this does not mean that a plaintiff must always name the individual officers who allegedly inflicted the constitutional harm.  As explained by the First Circuit in Wilson v. Town of Mendon, "[t]here is . . . nothing to prevent a plaintiff from foregoing the naming of an individual officer as a defendant and proceeding directly to trial against the municipality...."  294 F.3d 1, 7 (1st Cir. 2002).[2]

---

[2]     Indeed, while not addressing the issue of unnamed officers explicitly, the Third Circuit's ruling in Beck v. City of Pittsburgh, 89 F.3d 966 (3d Cir. 1996), involved a claim brought solely against the municipal where, after bifurcation, the plaintiff's case against the defendant officer ended in a mistrial.  Id. at 967.  Following the mistrial, the plaintiff dismissed his claim against the officer, and proceeded against the city on the claim that it had tolerated a custom and policy of condoning the use of excessive force by its officers, including the force allegedly used by the original officer defendant.

8

Plaintiffs do not often choose this route because "[t]he predicate burden of proving a constitutional harm on the part of a municipal employee remains an element of the case regardless of the route chosen and is much easier to flesh out when the tortfeasor is a party amenable to the full powers of discovery." Id. at 8. Morever, proving a Monell claim based on constitutional harm inflicted by unnamed officers is difficult; a plaintiff must show not only that he suffered constitutional harm but also that the municipality had a policy or custom that encouraged excessive force and that said policy or custom was a motivating factor in the officers' unconstitutional conduct. Id. ("The burden of placing that harm in the context of a causative municipal custom and policy is significantly more onerous than the task of simply proving that an actionable wrong occurred.").[3]

Wilson, while explaining that a Monell claim may proceed where a plaintiff has not named the officers who inflicted the alleged constitutional harm, acknowledges that "[t]here is, at first blush, a visceral unease at the idea that a person's conduct can be the subject of a jury's condemnation in a case to which the person is not a party." Wilson, 294 F.3d at 8. By analogizing to unindicted co-conspirators who are frequently the subject of adverse jury findings, and to private employers sued under respondeat superior liability while the employee is unnamed, the Wilson Court reasons that situations where not all

---

[3]     By way of example, the Fifth Circuit granted summary judgment on a Monell liability claim predicated on excessive force by two unnamed officers. The circuit granted summary judgment even though the plaintiff presented sufficient evidence that the officers used excessive force because the plaintiff failed to present sufficient evidence of a municipal policy or custom. See Peterson v. City of Fort Worth, Texas, 588 F.3d 838, 850 (5th Cir. 2009).

culpable parties are named as defendants are generally permitted by our law. See id. at 8, n.17.

Moreover, Wilson explains, a plaintiff who fails to name the officers who allegedly inflicted the unconstitutional harm foregoes the opportunity to seek a judgment against the unnamed officers that would be personally binding upon the officers. Id. at 8. And, where a plaintiff initially brings suit against the officer and subsequently dismisses him to proceed solely against the municipality, the dismissal could have the claim preclusive effect of barring the plaintiff from attempting to re-litigate the same claim against the officer in another proceeding. See Young v. City of Providence, 404 F.3d 4, 25 n.17 (1st Cir. 2005). But a plaintiff's decision not to name the officers has no legal "effect on the factual question whether [the officers] violated [the plaintiff's] constitutional rights ...." Id. A plaintiff who does not name an officer as a defendant may still "seek[ ] a factual finding regarding the implications of [the officer's] conduct for the possible liability of the [municipality] as her employer ...." Wilson, 294 F.3d at 8.

This is not to say that a plaintiff may make a mockery of the judicial process through pleading gamesmanship. While the Wilson Court rejected the general proposition that a plaintiff must name the municipal employees who allegedly inflicted the constitutional harm as a defendant in order to sue the municipality, the circuit affirmed the lower court's refusal to submit to the jury a special verdict form on the unnamed officer's alleged constitutional harm in that case. This was because the plaintiff intentionally did not name the officer as a defendant in order to prevent the municipality from presenting evidence

10

of a prior perjury in another case that called into question the officer's veracity.  On the eve of trial, the plaintiff also dropped all claims that would have permitted the municipality to introduce evidence of the officer's perjury.  Throughout the trial, the officer's name was mentioned several times and testimony was admitted as to her excessive-force related actions.  Following closing arguments, the plaintiff requested that the jury render a special verdict on the officer's infliction of constitutional harm.  The lower court denied the request, erroneously holding that a Monell claim may not stand when the officer who allegedly inflicted the constitutional harm is not named as a defendant.  Rejecting the lower court's reasoning, the circuit nonetheless affirmed on the alternate ground that the plaintiff's "mid-trial switch in strategy [was] troubling and ultimately unfair" to the defendants.  Wilson, 294 F.3d at 13.  In the circuit's view, the plaintiff sought to obtain a factual ruling on the officer's conduct without allowing the municipality to present unfavorable evidence about that officer.

Here, Plaintiff does not dispute that his Monell claim is predicated on Officers Kurfuss' and Kmiec's conduct, nor that he failed to name these officers as defendants.[4]

_____

[4]     The First Amended Complaint makes clear that Plaintiff's Monell claim against the City Defendants is explicitly based on these officers' use of excessive force, which he asserts violated the fourth amendment.  See First Am. Compl., ¶ 25-6.  To be sure, Plaintiff's claim against the City Defendants is not a substantive due process claim under the fourteenth amendment for which these defendants may be independently liable "even in situations where none of [the officers] are liable."  Brown v. Commonwealth of Pennsylvania, 318 F.3d 473, 482 (3d Cir. 2003) (discussing Fagan v. City of Vineland, 22 F.3d 1283, 1292 (3d Cir. 1994)).

        In this connection, the Court further notes that there is a line of cases in the Third Circuit beginning with Fagan, supra, that stand for the proposition that "a

11

However, the record in this case does not suggest that Plaintiff engaged in pleading gamemanship.  As noted, Plaintiff attempted to amend his First Amended Complaint to substitute the officers names for the "John Doe" defendants he originally named.  Unlike the plaintiff in <u>Wilson</u>, Plaintiff sought to name the individuals officers but simply failed to do so in timely fashion.  There is no indication in the record that Plaintiff sought some sort of competitive advantage in not naming the officers as defendants.  Hence the sort of unfairness present in <u>Wilson</u> is not a concern here.

Returning to the reconsideration question at hand, I conclude that there is no error of law in my prior ruling denying summary judgment to the City Defendants for the November 2004 incident.  Because Plaintiff was not permitted to substitute the unnamed officers for the John Doe defendants, no judicial determination as to the officers' liability has been made.  This distinguishes <u>Heller</u> and its progeny because, in those cases, there had been a judicial determination that the officers did not inflict constitutional harm. So, while the general rule is that "municipal liability will only lie where municipal action actually caused an injury," <u>Grazier</u>, 328 F.3d at 124, <u>see also</u>  <u>Simmons</u>, 947 F.2d at 1064,   until a

---

municipality's liability under section 1983 for a substantive due process violation does not depend upon an individual officer's liability."  22 F.3d at 1293.  <u>See</u> <u>e.g.</u>, <u>Kniepp v. Tedder</u>, 95 F.3d 1199, 1213 (3d Cir. 1996) ("The precedent in our circuit requires the district court to review the plaintiffs' municipal liability claims independently of the section 1983 claims against the individual officers, as the City's liability for a substantive due process violation does not depend upon the liability of any police officers.").  This line of cases, however, has been questioned.  <u>See</u> <u>Brown v. Commonwealth of Pennsylvania</u>, 318 F.3d 473, 482 (3d Cir. 2003) (discussing circuit split and rejection of <u>Fagan</u>'s reasoning by other courts).  As noted, the plaintiff here has not asserted a substantive due process claim against the City Defendants.

judicial determination as to whether Officers Kurfuss and Kmiec inflicted constitutional harm is made on summary judgment or at trial, there is no basis for granting summary judgment at this juncture on Plaintiff's <u>Monell</u> claim.

In this connection, the Court notes that the City Defendants have not moved in prior motions or the instant motion on the question of whether Officers Kmiec or Kurfuss inflicted constitutional injury on Plaintiff.   In the earlier summary judgment motion decided in 2009, the City Defendants admitted for the purpose of that motion that these officers used excessive force.  <u>See</u> <u>White v. City of Trenton,</u> No. 06-05177, 2009 WL 1442765, *1 (D.N.J. May 20, 2009).  With regard to the December 27, 2011 summary judgment decision, the City Defendants moved on causation grounds and did not argue in their papers that Plaintiff did not suffer a constitutional deprivation of his Fourth Amendment rights at the hands of Officers Kmeic and Kurfuss.  Hence, while the issue of whether Officers Kmiec and Kurfuss actually used excessive force against Plaintiff may be ripe for summary judgment, it is not before the Court today.

In the event the City Defendants do not successfully move for summary judgment on whether Plaintiff has proven constitutional harm and this matter advances to trial, I may exercise my discretion to bifurcate the trial.  <u>See</u> <u>In re Bayside Prison Litigation</u>, 157 Fed.Appx. 545, 547 (3d Cir.  2005) ("A district judge may bifurcate a trial 'in furtherance of convenience or to avoid prejudice, or when separate trials will be conducive to expedition and economy.'") (quoting Fed.R.Civ.P. 42(b)). Should the Court bifurcate, Plaintiff will first be required to establish that Officers Kurfuss and Kmiec used excessive force and that he

suffered constitutional harm during the November 2004 incident. Only after a jury returns a verdict in his favor will Plaintiff then be allowed to present evidence on the Monell claim and submit that claim to the jury.

Even if I elect not to bifurcate the trial, Plaintiff is reminded that he will be required to first establish he suffered constitutional harm in order for his claim against the municipality to succeed. See Bayside, 157 Fed.Appx. at 548 n. 7 (noting that district court used a special verdict form instructing the jury to first consider whether a constitutional harm had been demonstrated and that "[i]f your answer is 'No' to [that q]uestion . . . cease your deliberation and return your verdict.") See also Brown v. Commonwealth of Pennsylvania, 318 F.3d 473, 482 (3d Cir. 2003) ("The threshold issue presented by any § 1983 case is whether a plaintiff has sufficiently alleged a deprivation of a right secured by the Constitution.").

The Court further reiterates that, in addition to the constitutional harm element of his Monell claim, Plaintiff must establish existence of the custom that implicitly encouraged excessive force and that the custom was a motivating factor in the officers' use of excessive force in the November 2004 incident. See Canton, 489 U.S. at 385 ("[O]ur first inquiry in any case alleging municipal liability under § 1983 is the question whether there is a direct causal link between a municipal policy or custom and the alleged constitutional deprivation."); cf. id. at 391 (noting that, for a failure to train theory based on certain officers' refusal to obtain medical care for the plaintiff, the plaintiff "must . . . prove that the deficiency in training actually caused the police officers' indifference to her medical

14

needs"). "Municipalities . . . may be liable for constitutional torts [only] if two prerequisites are met: (1) the plaintiff's harm was caused by a constitutional deprivation; and (2) the municipal entity is responsible for that violation." <u>Vargo ex rel. Vargo v. Plum Borough</u>, 376 Fed.Appx. 212, 215 (3d Cir. 2010) (citing <u>Collins v. City of Harker Heights</u>, 503 U.S. 115, 120, 112 S.Ct. 1061, 117 L.Ed.2d 261 (1992)).

In sum, summary judgment on Plaintiff's <u>Monell</u> claim is not appropriate at this juncture under <u>Heller</u> and, consequently, there is no basis for reversing my prior denial of summary judgment.

**IV.    CONCLUSION**

For the reasons set forth above, the City Defendants' motion for reconsideration is granted.  However, the Court affirms its prior denial of summary judgment on Count III of Plaintiff's First Amended Complaint against Director Santiago in his official capacity and against the City on that same count.

Dated: March 23, 2012                                     /s/Freda L. Wolfson
                                                          Freda L. Wolfson, U.S.D.J.